May it please the Court, my name is Robert Greenspan, appearing on behalf of the United States. Might I reserve four minutes of rebuttal? You may, but you should watch the clock or you may use it up. Okay. Your Honor, this was a medical malpractice case brought against the government pursuant to the Federal Interior Claims Act, the district court held for the plaintiffs, and in so doing committed two errors. First, the plaintiff's action should have been dismissed for failing to exhaust the Federal Interior Claims Act administrative claim procedure mandated by Congress pursuant to 28 U.S.C. 2675A, and secondly, that the district court failed to order a reversionary trust under California Code 667A. The first issue is the – is the – that the district court erred in holding that equitable tolling was available to extend the time limits of the administrative claim. Can I just tell you what's at the heart of this case for me? Yes, please. I find exceedingly troubling, which is the district court may or may not have been wrong that they say bad facts makes bad law. There's no question there was malpractice here. This child is crippled for life, and the government's standing on three days to get out of its obligation to compensate these people, and it was a military person whose child was injured in this way. I mean, doesn't that seem as though perhaps the government should have made a different type of decision in this case? Well, Your Honor, I must say if one could isolate this instance and say, well, you know, just put it aside. You could. You could settle this case. You could give them the 1 million and drop the appeal. Right. That would be one – that would be one expedient. But there is – the fact that it was so distressing in this case was the fact that we do have a ruling by a district court, which overrides and disregards the intent of Congress, the decisions of the Supreme Court, and – Oh, you might be able to settle it and vacate that. But let me ask you a different question, even as to the strength of your case, which I'm not – the more I look at it, I'm not sure it's as ironclad as it might first appear. First of all, we have a case called Lehman v. United States, which you relied on. Right. I don't know if you looked very carefully at the facts of that case, but as far as I can tell, and you can tell me why I'm wrong, the – there is a determination in that case that the first case, Lehman 1, was properly filed and there was jurisdiction over it and so on. The facts of that case, the first case, are pretty much the same as here. That is, it was filed early. The Postal Service denied it on January 21st, 1994, and it was filed, I guess – no. They filed it – the administrative claim in May and they filed the lawsuit in July. Right. But they didn't serve it until December. And it appears that in deciding that that was a proper case, the district – our court was relying on the service state. And if you rely on the service state here, it was a proper case. Right? If you do, but I – I know, but I'm telling you that Lehman did that. It had to have done that because it's the only way they could have come up with what they came up with. But even if they did, in the first one, as I recall it, that there was no determination that that was – because if that were true, I think the second suit that was later vacated was – would have been untimely. It was untimely. That's why it was vacated, the second one. But the first one, the opinion says quite clearly, was a timely suit. I recall, but it was then – it was then dismissed. That's important what the problem was. It was then later dismissed. The denial – then the only other opportunity to sue arose after the agency denied the claim, officially denied the claim when it did. The suit was not reinstituted until, unfortunately, more than six months had elapsed. That's correct. But before they got to that issue, the Court said quite distinctly that the original case was a problem. That may have been. That may have been, Your Honor, and I accept that. But that case was dismissed, and having dismissed that, when could she – when could she file the next one? The only way she could file the next one, given the fact that the – There was also a 60B motion with regard to the first case, which we decided – and we didn't say it was without – we were without jurisdiction to do that. What I'm telling you is that Lehman seems to me to have accepted, with regard to the first case in that case, the sequence here, which relies on service rather than filing. I understand there are arguments against it. But I – and McNeil did not address that question directly. I see. With all respect, I don't really agree, but I think given, you know, the rapid rush of time in this, if you don't mind, the only thing I would say was that was not an issue in that case. It may have happened, but what was at issue was the dismissal after that and the failure to refile within six months after the – if I have it right, the failure to refile after the order of denial for a claim came down. And unfortunately, she never refiled within six months, at which point that's where the crux came, if I'm right. The crux came is she did not refile after the case had been denied. After her claim had been denied, she refiled, I think, about eight or nine months later, and it was dismissed as untimely. What this shows, I think, is that – please forgive me for this. Is that there has been an unbroken line of decision extending back in your court for over 25 years in the clearest and most unmistakable form that this is jurisdictional, that there is no – as Jervis in this Court said – I would tend to agree with that. And therefore, where I have focused my interest, and that's why I looked so closely at Lehman, is on the question of whether the date – the relevant date here is the filing date or the service date. Because in terms of the interests that are served by the exhaustion requirement and McNeil's account of that – those interests, those interests were not implicated here because the service was after the six months. So the government did not have to deal with – if the government didn't settle the case in that time period, and if it had wanted to settle the case in those three days, it could have done so and never had to deal with this case. Roberts. You know, I am a – you know, I appreciate that view, but it really, I think, would not – really does not hold water, I think, in the sense of that. Tell me why exactly. Because when McNeil talked about instituted, it says when the lawsuits commence. And it is pretty clear about that. I don't think McNeil ever referenced the Federal rules. It's true that there is a Federal rule that says commence means file. McNeil does. But McNeil did not reference the Federal rules and was not dealing with this question, right? I think it did. There you go. I looked pretty closely at that. I think it does. I've got to get my copy of it. Not in that context. Because what happened – what essentially was the argument that the Federal rules that McNeil made, he said that – he said that you could – and there is also, you know, that famous Fifth Circuit case study where they say that service cannot heal or cannot rectify a complaint that the jurisdiction was lacking at the time it was filed. But now, this is the Fifth Circuit. But I do believe that McNeil does refer to the Fifth Circuit. Is that in this context? Yes. Thank you. I don't remember. Oh, gosh. So many of these cases. But it's there. It's Reynolds, I think. I'm sorry. What did you call it? I think it's Reynolds. I think we cite it in – is it Reynolds? Can I furnish you those later? Sure. That would be great. It's in there. And we cite it. Anyway, the issue in McNeil had nothing to do with the service problem, right? No. But the concept of institution does, I think. Sorry? The concept of the meaning of instituted does. Because an action is instituted upon the filing of the complaint, not because instituted means the commencement of the action. And commencement of the action has begun with the filing of the complaint. But that would be really quite disconnected from the interest that McNeil was explaining as to why one is rigid about the six-month period or the exhaustion requirement here. Well, he did argue that the claimant did not begin until filing and the ending of the denial of the administrative claim. I understand that, but this is a different problem. The problem here with the issue is that the government didn't know about the case and therefore was not – had no reason to take action with regard to the case. And that is the interest that McNeil identified as what the statute's about. And even in that case, which I don't – you know, I won't have to look at that again, but whatever, you know, whatever they were focusing on, that the – McNeil speaks at length upon what – when an action is instituted for purposes of 2675. And speaks unequivocally that the complaint – that the action is instituted with the filing of the complaint. It doesn't say that either. It just says that it's instituted when it's begun or commenced. It doesn't deal with the question between filing and service. Well, it would be, though, wouldn't it? It would be something internally inconsistent, wouldn't it? If the – if you construed 2675 to say that the time runs from the institution of the complaint, then it couldn't possibly run from service, which is a later time. You couldn't have instituting as the commencement, the beginning of the lawsuit and yet have service be the time for 2675. It just couldn't. That's the question. It just couldn't coexist, I'm afraid, in that same way. And so I think that – and I will send you the other site. And if I had, if I could look a little longer at McNeil, I think they do talk briefly about service, but perhaps not. And – Well, can I ask you, just as a factual matter, you say it was three days early. Correct. Okay. What was the – what was the government going to do within those three days? I mean, if they had waited three days, then this would have been denied by virtue of the six months. If it had been three days, then it would have been time. Yes, this is true. So they were not going to accept it? They were not going to accept the claim? Well, they had the claim, and they had not made any decision on it. The fact is, though, I think in connection with that – in connection with that, the Navy in this particular region is very active in settling these claims. This is the first – this is not a passive agency just sitting around. But it did in this instance, Justice Kennedy. In this instance, it did. I wouldn't call it sitting about, but it didn't reach this one. But it does entertain – Which is fairly odd, because this seemed like a pretty good claim. Well, you know, they are very busy, too, I think. And I will tell you, they settled about 2,000 – right, in the years 1999 to 2000. And this is in the – we have this in the reply brief. There were 200 – 2,444 claims submitted, which is not an insignificant number, you know, for a limited office there. And of these, 1,645 resolved administratively with payments. And you'll find a reference to it on page 13 of our reply brief. This is a very accurate – And the only stumbling block to that right now, you say, is the existence of the district court opinion in this case? Yes. Well, why couldn't you reach a settlement with the plaintiffs now and, as part of this settlement, agree to or ask us to remand to order the district court to vacate its order? Well, I think if you're suggesting that – You are suggesting that quite strongly. But your suggestion was we give them a million dollars to do that. If you give me a million dollars, I'll do it. But I don't think we – if you mean that, we have to give them the judgment in order to do that. I don't think we could do that. Not a judgment. A settlement. But not a million dollars. That's what you were suggesting. Well, whatever the claim was that they – Right. You're going to spend more time litigating this, and we're going to find a way to rule against you. And then you're going to have to appeal that. So why do all this when you know this is a just claim, and it probably just fell through the cracks? This is untakeable. I'm certainly – I strengthened my hand. But I think if you're going to rule against us, though, you can imagine what kind of settlement. And I would hope you would also say, however. You know, you have really an open mind. You're not at all sure about that. Because what can – I have an open mind. Why am I asking you this question? And I find this a very difficult case. But as I say, the one – and I tend to agree with you about the equitable tolling. I don't see either where that comes from, given our history, or why this would trigger equitable tolling. It was a mistake. But where I do have a problem is on this service filing question. And I would appreciate it if, while you have some time while the opponents are arguing, if you take a look at Lehman and take a look at McNeil and tell me why you think that that's a determined question or why Lehman does not, in fact, determine it otherwise. That's – And I have my Harry Prayerson hat on. I'm trying to – you know, district court judges just tend to fall back into that. But I do have an open mind on this. But I am intrigued by Judge Prezant's argument, which I heard for the first time today. I guess I'm left. You can reserve. Okay. I have four minutes. Good morning, Your Honor. May it please the Court. Michael Fish and Robert Bogie on behalf of the appellees. Let me first try to address one question that came up. The issue of service did not – was not raised in McNeil. You're correct. No, it was not. Okay. Nor, as far as I can tell, were the Federal rules cited. Let me – I'd like to address the jurisdictional issue that the Court mentioned. Because as I read McNeil and the juror's case, I think there is a way around it to make it consistent or make those cases consistent with Irwin and the jurisprudence that's come after Irwin. My ultimate problem is, first of all, I doubt it. But second of all, why would any – what argument do you have for equitable tolling of this case? Now, what I do think is possible is that if we were to reverse here, you might be able to refile and argue that the whole period that this has been pending is equity to be told in the next case. In the next case, we know – we know that you could have filed a second case, which you didn't do. And it's possible that there's an equitable tolling argument there, because there you'd be tolling 2401, not the exhaustion requirement. But I neither see an argument for tolling the exhaustion requirement, nor do I think that this would be a reason to toll it. You made a mistake. Okay. Let me address both points. Okay. I'll address the factual point first. Okay. I'm sure we made a mistake. But the question on that part of the case, if we assume that there is jurisdiction to do it, that the 2675A is a procedural bar rather than a jurisdictional statute, is did the district court abuse its discretion in determining to grant equitable relief? No. It's a statutory question first. Right. Question one is, does he have the authority to do it? And question two is, did he abuse his discretion? But what basis did he have for tolling it, assuming it was tollable? Yes, that's what I'm getting into. Okay. Number one, the mistake was one of exceptional diligence rather than the type of mistake that comes from neglecting rights. I mean, Plaintiff's counsel's sin here is trying to get to the point. Well, part of it was, but you also got a letter saying we're closing the claim and notwithstanding the pendency of the lawsuit, you must file within six months of this order, and didn't do it. So that's not so diligent. Well, the letter, the letter is almost, is actually meaningless in the context in which it was given. As I pointed out in my brief, that letter was no notice at all. The letter says, we know that you filed, we're aware that you filed a lawsuit. Well, I'll read it. Well, I recognize that litigation is already pending in this matter. You are advised, nonetheless, that should you choose to file suit, it must be filed in the appropriate United States district court within six months of the date this letter is sent by certified mail. That's a non sequitur. What could that possibly mean? We understand that litigation is pending, but if you choose to file suit, this is when you have to do it. It doesn't make any sense. In context, what it turns out to mean is the suit's pending, but it's not proper, and you, therefore, have to file within six months of this. It sure doesn't say that. Let me go back to even another factor, which I think is important on the equitable factual basis. And I'll get to the legal issue in a minute, because it's an interesting one. Factually, when you look at the plaintiff's complaint, which in paragraph 18 pleaded exhaustion of the 2675A, the government was required to respond to that in its answer in a truthful and specific way. Now, the government knew at the time that the lawsuit was filed three days early. And when you look at their denial, their denial is one for lack of information and belief. It's an untruthful pleading. And that's an equity the Court could consider. And the court could consider. Now, let me, that was one question I had on this issue. In their answer, did they raise, I mean, you don't have to raise it necessarily, but did they raise the jurisdictional problem? Yes and no. Let me answer that. They alleged as one of 16 affirmative defenses, lack of subject matter jurisdiction, which they claim was noticed to us that the lawsuit was filed too early. Yet at the same time, they also allege as an affirmative defense, affirmative defense number nine, quote, the complaint and each and every count contained therein is barred on the basis of laches, that it was too late. So which is it? Is it too early? Is it too late? This, the answer itself is self-contradictory. How could that possibly give reasonable notice to a plaintiff's lawyer that his lawsuit was filed three days too early when the government's blowing hot and cold? You don't say there's no subject matter jurisdiction. The government doesn't say why. The government doesn't say for failure to comply with 2675A. They cite nothing. I don't know what that means. But I do know what it says. The complaint is barred on the basis of laches. Well, if we read that truthfully, they're saying the complaint was filed too late. So which is it? That's what I'm saying. The fact that bothered Judge Brewster was that he didn't actually specifically detail that the complaint was premature until after the statute of limitations to file had run. It's pretty obvious that there was sandbagging going on. Because if the government, this is interesting, if the government contends that its answer gave us notice that the complaint was filed too early, then they knew the day in August of 00, the government knew what the situation was. And then the government played a little game with everyone. They engaged in discovery. They took, they participated in depositions. They propounded interrogatories. There were document requests. There was a status conference. Certain deadlines and dates were set. And it was all a hoax. Because you could see them plotting and waiting. Twelve days after it was too late to cure, up comes a motion to dismiss out of nowhere. So. There was a district court case in the Nether Circuit which was very similar, with the exception that the government assertively, affirmatively said that we're not going to raise this, and then did. And there the district court found tolling for the whole period that the first suit was pending. But it still depended on their filing a second suit. And it would still lead to the reversal of this suit and the possibility of filing a second one. Roberts. That's right. I disagree. Maybe we should turn ourselves to the law. Doesn't that matter? I mean, in terms, as a practical matter, as a solution to this mess? Well, the case would need to be retried. And we have a. Would it have to be retried? Why can't you just go back to Judge Brewster, refile the case, and try it on the, and submit the transcript of the case we already heard? I don't, Your Honor, I haven't thought that through. I don't know. So what are the legal points that you want to make? Because Judge Berzon raises the date of service, which is actually, I think, quite a good point. But it seems to me that the arguments you made don't have the legal support. Because of McNeil. Let me address that, McNeil and Jervis, if I can, because I think there's a good explanation for both. First of all, I didn't actually realize this until yesterday. McNeil never says that 2675A is jurisdictional. You do if you. But we said in Jervis after McNeil. So I think we're a three-judge panel, and what can we do better? Okay. Let me address that, then. This is what the Court said, is that, first of all, we all know that the facts in Jervis were totally different. We have ongoing settlement negotiations, and then the plaintiff gets in a little – gets a bee in his bonnet and files a lawsuit during – while there's negotiations going on before the six months has lapsed. So it's a direct assault on the entire purpose of 2675. So let's just leave that out there to hang for a minute. Now let's look in that context what this Court said. And what the Court said is, as almost an afterthought at the end of the opinion, the requirements of 2675A are jurisdictional in nature and must be strictly adhered to, citing Meridian, a 1991 case. But when you go and look at what that case says, that case simply cited a 1977 case. So there's no post-Irwin development of the legal analysis. But McNeil is post-Irwin. But McNeil doesn't hold that 2675A. But it holds that it has to be strictly adhered to, which is exactly what the sentence says. In the context, in McNeil, there was an absolute violation of the statute. The complaint was filed four months before the administrative claim was filed. That's totally different. Kagan. There was also a violation of the statute, except if you think that the – that the service date matters. Well, I would respectfully disagree in this – to this extent. McNeil holds that, look, the whole purpose of this statute is to give the government an opportunity to negotiate a settlement and have a rest period of six months. If you act in utter statutory apostasy, is what it was. And the problem with any legal rule is there's always a reductio ad absurdum where you're almost there, but not quite. Right. And here we've got three days, but conceptually, it's the same as if it were three months, except for the fact that there was no service. Except for the fact that in – well, you're right. But in Irwin – Irwin, Your Honor, there was no equitable factors in play. You know, it's interesting that in – I mean, in McNeil. Well, the equitable factor was simply that in the end, they had enough time to settle it, and they didn't settle it. No. After the suit was filed, not before. You're talking about jurors now? No. I thought I was talking about McNeil, but maybe I'm not. McNeil – McNeil is the case where the lawsuit is filed. Right. Four months go by, the administration's claim is filed. It's a clear defiance of the statute and its entire purpose. And what – and there was – there was no equitable factors, no minor. You had done everything you did, but instead of filing three days early, you filed three months early. Then wouldn't McNeil apply? Then – then we're in the same situation we're in, is because – I haven't quite got there yet, but jurors isn't – jurors doesn't bind this Court in following Irwin. Let me go – let me step back for a minute. When I got this case, I had to draw myself a picture, because this stuff, it wasn't making any sense to me. And the – I don't know if you can see this, but it's aligned with three divisions. Now, the first division is 2401B. That's the statute that says you have to file your claim within two years of when your cause of action accrues. The second is the six-month waiting period. That's 2675A. And then the third block is the other half of 2401B, the statute that says you have to file your lawsuit within six months of when your claim is denied. Now, this – Now, my understanding of our law is that 2401B doesn't even apply in these circumstances at all, that when you have a six-month period and you're doing a deemed-denied thing, you can – you have an open-ended time period. Until there's a formal denial. Right. Until there's a formal denial. That's my understanding. So the 2401B would apply to the next suit, but doesn't apply to this one. Okay. Let me get back here. Now, we know under Irwin, which – and under this Court's case in Alvarez, this first period is subject to equitable tolling. No question about it. And we know that this third period is subject to equitable tolling. That's the Stanfill and Hyatt cases. So the open question is the middle. So we have these bookends, and we're talking about the book. And the statutory language in 2401B and the language in 2675 is virtually the same. In fact, 2401B is even stronger against the equitable type of argument, because it says, a claim against the United States shall be forever barred unless you file it when we say. But we know in Alvarez, this Court said, it doesn't really mean that, because Irwin said, unless there's jurisdictional type of language in the statute, there's a presumption that equitable principles apply to time requirements against the government. Using that same analysis, look at 2675A. It says, an action shall not be instituted unless you wait the six months. The language in the statute is virtually identical. In fact, an argument could be made, 2401B is even stronger, forever barred. And yet, in 1997, in Alvarez, this Court said, equitable principles apply. It makes no sense to me to say equitable principles apply to Block No. 1, and equitable principles apply in Block No. 3, but they don't apply in Block No. 2. Why? Why? We're supposed to be searching for congressional intent. Irwin, the Supreme Court in Irwin teaches us that that intent is to be presumed unless Congress tells us otherwise. So if the only stumpling block to get to this result is this Court's decision in Juroves, I would submit that if, when you look at what Juroves cites and what it says, it's no longer good. And here's why. Again, Juroves relies on the Meridian case, which itself simply cited a 1977 case. Irwin's done away with that. Irwin's 1990. Yes, but all you could possibly be saying from our point of view, of us three judges sitting up here, is that Juroves was wrong. Juroves is, after 1990, Juroves is wrong. It was decided after 1990. It was decided in 1992. So in terms of our ability to not follow it, we don't have that authority. I got one more. I got one more. I got one more bullet. And the other bullet is this Court's opinion in 2002 in Blair. Because let me continue reading this Court, what this Court said in Juroves. To back up its statement that it was jurisdictional, the Court in Juroves said the reason it was jurisdictional was any such waiver must be strictly construed in favor of the United States. I'm just reading. I'm not making this up. It's right there, right after it says the rule. 2675A establishes explicit prerequisites to filing a suit against the government. But in 2002, in the Blair case, this Court said the exact opposite with regard to how 2675A is to be interpreted. This Court said it's a remedial statute. It's to be liberally construed in favor of its remedial goal. We reject, I'm reading directly now from this Court's opinion in Blair, we reject the government's argument that principles of sovereign immunity require district courts to dismiss. This Court says waivers of immunity should be read in a way that achieves the waiver's remedial purpose. That's this Court in 2002. So when you look at the page that you're reading from, the page you're reading from. At page 866, 304 Fed Third at page 866, and specifically footnote 4 is what I just read from. Okay. So that's why I, that's my Juroves argument. Is look at the facts. They're totally different from ours. It's statutory defiance. The Court's statement of the law has since evolved. In the 10 years since Juroves, the Court is now putting a different policy, a different purpose, a different interpretation on the same statute. So that's why Juroves isn't the impediment that it might otherwise be. That's an interesting argument. Did you make those arguments before, Judge Brewster? I wasn't counsel in the district court. I don't recall. I don't know the answer to your question. I have a question. If we were to think that our famous Ninth Circuit mediation office might be helpful, would you be willing to consider mediating this case? Governor Bob Boagie, good morning. In fact, in this case, the government asked for mediation long ago, and a mediator was kind enough to come down, and essentially the government's position after trial was unchanged from before trial, and the mediation didn't take very long. So we're always, of course, grateful to go back to mediation. Okay. Thank you. Do you want to say anything about the reversionary interest question? I have nothing more to say that's in my brief. Are there any other questions? Thank you very much. Thank you. I wasn't looking at these cases, and you're right, Judge Brewster. I think I got about the rules of civil procedure under McNeil. So you're right. I didn't find that there, and I do apologize for that. On Layman, I think that in looking at it, the administrative claim in Layman was timely. The lawsuit in Layman 1 was timely filed, if I'm reading this correctly, that what happened was the claim was denied on the claim was submitted. Let's see. Well, the claim was submitted on May 28th in 1993. It was filed in July. Right. And then what Layman did was to sue a private individual in Arizona. And when she sued the United States, she did that, according to the Court. The plaintiff did not, however, serve the summons and complaint until December 29th, more than six months after they filed the administrative claim. So I think what happened was that the ---- And the United States removed the action to Federal court and substituted itself as the sole defendant. Right. So I think that the ---- so she filed the complaint more than six months after the administrative claim. So I think when she brought suit against the United States, she was outside. She never brought suit against the United States. She brought suit, and this happens all the time. She brought suit against an employee, and the United States considered that employee to be itself. It didn't ---- I very much doubt that the United States, by substituting for a defendant who was already there, they didn't file the suit. The only time the suit was ever filed was two months after the administrative claim. There was no ---- the plaintiff didn't refile the suit again. Well, the plaintiff ---- well, did not, however, serve the summons and complaint until the 29th, December, more than six months after they filed it. So that ---- Not on the United States. And she never served the United States as such. But my understanding of the way FTCA works is that it's considered to be the United States when you sue the employee. Well, right. But when you file there and you're substituted, you get another two months to file the claim. But I won't, you know, I won't go on about that, Your Honor. It may be that that was correct there, but if you look at the Holman decision, it is never the focus of that decision. Which decision? The Layman case. The Layman case. It was never the focus of it because it was accepted by everyone for reasons that you're right, that may have been obscure, but no one seemed to challenge that, the timely filing of Layman 1. It never was an issue. But there was still a definite decision at that. Plaintiffs in this ---- on page 1013, plaintiffs in this case properly invoked section 2375A to perfect the timeliness of Layman 1. They presented their administrative claim to the Postal Service in a timely manner but did not receive the agency's notice of final denial within six months this after. Thereafter, accordingly, plaintiffs deemed their claim denied and filed and served their complaint in Layman 1, which they only did two months later. The United States does ---- but they ---- and it mentions the service. It mentions it. The United States does not dispute the timeliness of Layman 1. Right. And there may have been, from what we know, there may have been some confusion with the removal stuff. The only ---- I see what you're saying. I won't belabor it anymore. But the focus ---- Well, it mattered in the case because there was a 60B motion, and if there was no jurisdiction in Layman 1, the answer to the 60B motion should have been we never ---- there was never jurisdiction in Layman 1, but that was not the answer. Right. Okay. May I ask a slightly different question? You're opposing counsel, I guess, in an argument that wasn't presented below, but he's arguing to us now that Jervis, when it says that either that when Jervis says that this section is jurisdictional in nature, either that Jervis is wrong in saying that, or that in light of later cases, those cases, or that Jervis is correct that it's jurisdictional in nature and doesn't speak to whether or not it can be equitably told, because both could be true, right? Well, I don't think ---- I don't think if it's jurisdictional in nature, it can be equitably told. I think that's ---- because that ---- it's difficult to imagine a jurisdictional statute which of itself confers power on the Court to somehow also be subject to equitably told. Are there other circuits that have said that this statute is jurisdictional and cannot be equitably told? Yes. Yes. You know, we have ---- we can't find any. Most of them do. I'm not prepared yet to say which ones. We did a run-on, and they all take this view. The only somewhat ---- the only caveat is there's some question now, I think, not that it isn't a literal statute, but whether it's a condition on the waiver of sovereign immunity, and not so ---- not whether it's ---- and that rather possibly than the concept of jurisdiction. Maybe it's some ---- there's some ---- something in the air these days that it might be a ---- I think the Seventh Circuit said that. Right. It's actually a condition on the waiver. Right. It may be something more. But otherwise, most of them ---- most of them are very clear about jurisdiction. They're very, very ---- If it's a condition on the waiver, though, then that ---- so it's three days early, so you don't ---- you have sovereign immunity for those three days, but ---- In other words, it's literally the same. That Congress insisted ---- Congress's condition of sovereign ---- was it mandatory to demand that ---- Well, it's a condition on the waiver of sovereign immunity, which sounds right to me. I mean, the other disturbing piece of information here is that you went ahead and acted as if the suit was a proper suit for six months. So why wouldn't that be a waiver? A waiver of ---- in other words, if it's a condition on the waiver of sovereign immunity, that's waivable, right? Whether it's ---- I don't think ---- I know. I don't think the government can waive ---- sorry. No individual attorney can waive sovereign immunity. No, but that's an interesting point, because if, in fact, courts view ---- you can't ---- Right. But you can waive waiver of a condition of sovereign immunity. Well, I would just say no one has yet gone ---- none of the courts have yet gone that far. And your court certainly hasn't. I mean, your court ---- But certainly true as far as the Eleventh Amendment of State sovereign immunity. I mean, there's all kinds of law that says that. Right. But the State can, by its behavior or expressly, waive Eleventh Amendment immunity, right? But I think you would now have to ---- you know, you'd have to repudiate everything that you folks have been saying all that time. Now, I mean, you know, it's possible. But I think that the tenor of your decisions is, nonetheless, a very, very strict view that ---- and I think it has to be that way. That's why, really, why we're here. And I know it's harsh to the plaintiffs in this case, but ---- Well, it's particularly harsh because it was easily fixable. I mean, all you needed to do was put in your answer that it was filed three days too early, and it would have been refiled, and that would have been the end of it. Can we look at what was going on here, though? You have ---- I don't know why my own courts really waste their time. If they end up with situations like this. And we didn't do it. You have a congressional statute that the courts have said are unambiguous. It says you present your claim, you go to court. Then, after that, you have a decision of the Supreme Court saying this is absolute. It is not a trap for the unwary. There may be fatal mistakes, says the court in the claim. But it is, and they put it, I think, very, very well. They say that the fair-mindedness, in the end, the best guarantee of experienced teachers, and this I'm quoting, "...strict adherence to the procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law." Now, the plaintiff there was a pro se prisoner. But my point is you have this out there. You have McNeil saying this. You have your decisions, 20 years. This cannot be modified. There is no way. It cannot be extended. Then we have, over here, these guys over here. So down comes, they decide to, as they put it, it is our custom and practice, they say, to not wait, you know, until six months after mailing, and then go ahead and get it. Ginsburg. Well, Ray, that's not really true. What really happened was they were going to get it. The lawyers definitely made an error, except if there's an error on the service point, possibly. But they thought that it was six months. I mean, if somebody calendared it, presumably. And it wasn't a stupid idea. It just happened to be wrong. No, but, Your Honor, you have. This is known to be, and as the Supreme Court explicitly says, this can be fatal. These aren't – these are statutes that are unforgiving. These are statutes that they are considered jurisdictional. They are – All I was quibbling with was that I don't think anybody did decide to file it before six months. I thought they thought they were filing it on six months. They thought, but they have these statutes here that – and the letter came, but they have decisions. My point is simply that if you have any doubt, you really have to look into these things. These are statutes that you have to look into. Okay. Just way over, way over. Okay. Do you really – were you the trial counsel in this case? No. Okay. And are you willing to have this sent off to mediation one more time? All right. So shall we issue an order sending this to mediation and not submit it? Yeah. What we ordinarily do is we defer submission and give you a certain amount of time to come back and tell us or have the mediator come back and tell us whether you're willing to mediate, in which case we will defer submission for longer than that. We're happy to do that. And I just want to thank you for the argument. Both sides, it was very illuminating. Thank you very much. And we will defer submission on SK versus the United States and take up Skolnick versus FAA, which also should not be 20 minutes per side.
judges: Wardlaw,berzon, Fitzgerald